By the Court. Mason, J.
The demurrer in this case was framed upon the idea that the forty-seventh section of the second title of chapter four, part third, of the revised statutes, was applicable to the judgment mentioned in the bill. But upon reference to that section, it will be seen that it relates only to judgments and decrees to be rendered after the act took effect, that is after January 1st, 1830. This case comes under the forty-sixth section, which declares that “ the presumption of payment shall apply to all judgments of a court of record in this state, rendered before the 3d of April, 1821, and to all such judgments- rendered before this chapter shall take effect as a law, in the same manner as such presumption applies to sealed instruments.”
*24 Even then, if it be necessary, as the pleader seems to have imagined, in a case arising under the 47th section, for the plaintiff in his bill to aver payment of some part of the judgment, or proof of a written acknowledgment of indebtedness upon it, (about which we express no opinion,) it clearly was not necessary in the present case.
The section of the statute which governs this case, does not create a bar to actions upon judgments after any given period, but only applies to them the same rule of evidence which the courts had previously established with regard to sealed instruments, and which was this : that they are presumed to be paid if they have been outstanding for twenty years, and no payment made on account, or acknowledgment given of their being due, and there are no circumstances which tend to remove the presumption. An inference offact is drawn from the staleness of the demand, to wit, that the demand has been paid. How the office of a demurrer is to bring before the court questions of law only. It is an admission of all the facts alleged by the plaintiff, and an averment that the inferences of law for which he contends, do not legitimately flow from the facts. The presumption of payment, however, is an inference not only of fact, but of a fact in contradiction of the claim of the plaintiff, and cannot therefore be made upon a demurrer. (Mitford PL, p. 213, 4th ed.) It is therefore the established doctrine of the cotuts of this state, both of law and equity, that in those cases where the statute of limitations has not created a positive bar, the party wishing to raise a presumption of payment from lapse of time, must plead payment, or set it up in his answer, as a fact, and rely upon the lapse of time as evidence in support of his plea or answer. (Livingston v. Livingston, 4 J. C. R. 287; McDowell v. Charles, 6 ib. 132; Henderson v. Henderson, 3 Den. 314; Fellers v. Lee, 2 Barb. S. C. R. 488.)
But there is another decisive answer to the presumption of payment in this case. The judgment rendered was a judgment of assets guando acdd&rint, and it is expressly alleged in the bill that no assets of any value or character whatever had at any time come to the hands of the administrators to be admi *25 mstered, and that the judgment remained in full force and unsatisfied. This fact of want of assets, effectually removes the presumption of payment, and accounts for the omission of the plaintiff to proceed upon the judgment. Insolvency and inability of the debtor to pay, have always been deemed sufficient for that purpose.
It is impossible, therefore, to sustain this demurrer on the ground of presumption of payment.
The demurrer for want of equity is also untenable. It is stated in the bill that at the time of the decease of Governor Tompldns, the government of the United States was largely indebted to him for an unliquidated balance of account; that the same remained unadjusted and unliquidated until on or about the 22d of February, 1847, and formed the whole of the remaining personal assets of the estate of Tompkins for the payment of his just debts; that about the time last mentioned, the government liquidated the accounts, and fixed the amount justly due to Governor Tompkins, at $49,795 02, but directed the payment to be made not to his administrator, but to his children and heirs.
How if this be so, and the demurrer expressly admits it, these moneys then due to Gov. Tompkins, and for so long a time unjustly withheld from him, belong in equity to his creditors. The government can no more divert them from their legitimate and honest application, than a private individual could in similar circumstances; and if it pay an acknowledged debt, not to the party to whom it is due, but to other persons with a view to screen it from that party’s creditors, equity will lay hold of the money in the hands of the payees wherever it can be traced, with a view to compel its distribution among those who are entitled to receive it. It is on this principle that relief is sought in this case against the children and heirs of Governor Tompkins. They are the recipients of a fund on which the plaintiffs have a prior and better claim. The money belonged to their ancestor; they claim only as representing him, without having paid any valuable consideration. The plaintiffs being creditors of the ancestor, have the same rights in equity against the fund, which they would have had against the ancestor himself, *26 were he living, and they had filed a creditor’s bill against him.
It was suggested on the argument that these moneys were paid, not in settlement of á debt, but as a gratuity, and in acknowledgment of the great and distinguished public services of Gov. Tompkins. If such be the fact, the defendants must set it up in their answer and establish it by proof. They cannot avail themselves of it on this demurrer, which admits that the moneys received by them were due the estate of their ancestor, and that they were assets applicable to the payment of his debts.
The demurrer must be overruled with costs.